Would the clerk call the next case, please? 3-14-03-92 Janet Hogle, appellant by Mark Bazel v. Jeanette Hurst, appellee by Brian Bagley Mr. Bazel? Mark Bazel on behalf of the plaintiff appellant, Janet Hogle, in this case. May it please the court, your honors, counsel. First of all, your honors, I'm just going to cut to the chase. We're here on an appeal from the Circuit Court of Will County in an automobile civil trial case in which there was a verdict entered in favor of the defendant. I understand you read the brief, so I'm just briefly going to go over some of the relevant facts and kind of get to the meat of it. What we are asking at this time is that this honorable court reverse the ruling of the trial judge denying the plaintiff a new trial and remand this case back for a new trial on the issue of damages only and perhaps with some other instructions regarding evidentiary rulings and jury instructions. The verdict in this case in favor of the defendant was against the manifest weight of the evidence in this case. And the evidence, as I will point out the facts, showed that the verdict of the jury in this case was not only arbitrary and unreasonable, but it was not based upon the evidence in this case. The plaintiff also moved for directed verdicts at the time of the trial,  and the plaintiff asserts that those should have been granted because the evidence in this case, even when viewed in the light most favorable to the defendant, so overwhelmingly favored the plaintiff that this verdict should never stand. First I'm going to talk about causation and damages because that's kind of the easy part. In the trial in this case, the plaintiff testified that she sustained injuries from this accident and also the plaintiff's medical providers all testified to a reasonable degree of medical certainty that the plaintiff sustained damages. And that was from her family doctor, Doyle, and a neurosurgeon, Dr. DePhillips. And they all testified to a reasonable degree of medical certainty that the plaintiff sustained injuries as a result of this accident. The defendant's own expert, Dr. LaCarte, opined and admitted and testified that the plaintiff sustained injuries as a result of this accident. Now there was a difference in opinion as to the plaintiff's treaters and the defendant's expert as to the extent of the injuries. Our treaters said that the plaintiff sustained radiculitis and severe sprain, things of that nature. The defendant's expert said she just sustained strains and sprains and it should have resolved in three to six months. Nevertheless, the defendant's own expert testified. Injuries, that doesn't mean you recover. So yes, there's injuries. Is that what this case is about, injuries? No, I think the issue on appeals really was negligence. That's right. But to cover causation and damages so that it's clear, I don't think the jury came back and found for the defendant on the issue of causation and damages or could they? Because the only evidence that the jury heard in this case was that the plaintiff sustained injuries. There was nothing to contradict that. So while the jury does have discretion to decide whether someone's injured or not, if all the evidence in the case shows and proves that she was injured and sustained damages that were caused by this accident, the jury can't just disregard all the evidence and just come up with some arbitrary decision. And that's why causation and damages in this case should have been directed. There's absolutely no way a jury could have found against the plaintiff on either one of those issues. They heard absolutely no evidence to refute that the plaintiff was injured. The defendant didn't testify as to the plaintiff's injuries. The defendant's witness didn't testify as to whether the plaintiff was injured or not. The only evidence that they heard was that the plaintiff was injured. And that's the Stamp case. A jury cannot hear evidence from both sides, the plaintiff and the defendant, and then come up with a decision saying, well, there was no injuries. That's just disregarding totally all of the evidence in the case. And, of course, that would be an arbitrary verdict not based on any of the evidence and totally unreasonable. But they found that she was more than 50% contributorily at fault. Right. So now I'll talk about that. And that's really the meat of this appeal. The plaintiff testified at the trial that she was stopped at a red light at this intersection for five to seven seconds, completely stopped, and that she was rear-ended. Obviously, that's 100% negligence on the part of the defendant. Now, here's the defendant's testimony. And it's kind of key to keep in mind some of the facts because I know the defendant will argue that, oh, these versions were contradictory and there's contradicting evidence and the jury could weigh one version versus the other. However, in this case, if you take either version, the defendant is still majority negligent. There's no way that the plaintiff could be majority negligent based on either version of this accident. So while the defendant will raise issues such as, oh, the defendant says the light was green, the plaintiff says the light was red, I'm going to show that that's not relevant. The defendant will also argue that, well, the plaintiff made a sudden stop in the accident, but the plaintiff says she did not make a sudden stop in the accident. I'm going to also show how that's not relevant as well. First of all, the defendant says as she's driving with her witness, they're 16-, 17-year-old girls driving around the perimeter of a mall looking for help wanted signs at hair salons. They just graduated from beauty school. The defendant says she stopped five to seven feet behind the plaintiff's vehicle. That's negligence right there. She should have been one to two car lengths behind the plaintiff's vehicle and if she didn't think that that was enough stopping distance or room, she should have stayed back. That was all within her control. No explanation as to why she didn't stay one to two cars behind. Defendant and the witness, passenger in her car, both admit that they saw the plaintiff's brake lights before the plaintiff actually came to a stop at this intersection. The defendant says that my client did come to a stop at the white line at a red light, but the defendant says then the light turned to green and the plaintiff started to inch forward. Again, the defendant and the witness both saw the plaintiff's brake lights come on again. That's two times. So this isn't a case where the defendant is claiming, oh, this is an abrupt stop and there was no brake lights that came on or illuminated. I had no idea that she was coming to a stop. The brake lights came on two separate occasions and the defendant saw them on both occasions and knew the plaintiff was coming to a stop. The defendant testified that this accident occurred just a little bit over the white stop line. So again, now this is not a case where there's some cases out there where someone's perhaps driving on a highway and slams on their brakes for some unknown reason. Well, you know, people are going 50 to 50 miles per hour and no one's expecting it. This was before entering an intersection. In fact, it was still pretty much at the white line, the white stop line. This isn't a case where a car traveled through the intersection and then stopped abruptly, maybe perhaps in the middle of the intersection or at the other side of the intersection. This accident occurred before the plaintiff ever entered the intersection. This was a right-turn lane, a dedicated right-turn lane? It was a right-turn lane, an indicated right-turn lane, correct. And it's kind of a guarded right-turn lane because there's a triangular cement median there in which the cars can kind of turn and kind of go down that dedicated lane onto southbound Hennepin. The defendant claimed that the plaintiff testified was not going that fast. The defendant herself said, well, the plaintiff wasn't going that fast. She had just started up from a stop. The witness for the defendant, who was the passenger, said that the plaintiff started inching forward and then stopped inching forward. So how fast could the plaintiff have been going? Maybe one to two miles per hour? I think the question has to be answered, and this is why this verdict is so unreasonable and arbitrary, is that if the defendant gives this incredible version of the accident, how could she be only five to seven feet behind the plaintiff's vehicle? And then the plaintiff's vehicle just starts inching forward, the brake lights illuminate, and the defendant can't bring her vehicle to a stop before striking the rear of the plaintiff's vehicle? That's an incredible story. If you look at the circumstances, and here's why the verdict is against the manifest weight of the evidence. The defendant's going to claim that there's different versions of the accident, one being that the plaintiff says the light was red, the defendant says the light was green. That has no relevance here. It doesn't matter. This was before entering an intersection, and the defendant rear-ended the plaintiff's vehicle. The defendant is going to constantly throw out the terms sudden stop, sudden stop, sudden stop. But I will tell you that in your review of the record on appeal, the defendant did not plead an affirmative defense of a sudden stop. What was pled is one that the plaintiff was going at too high a rate of speed under the circumstances. Well, that was shown to be not true and not based on any evidence because the defendant admitted the plaintiff wasn't going very fast and the passenger said she was inching forward and then stopped inching forward. But that issue still went to the jury even though we objected over that. The second affirmative offense was that the plaintiff did not give adequate... I'm sorry. So I get the wording right. Plaintiff... I'm sorry. Failing... This was the second affirmative offense that the defendant pled. Failing to apply her brakes so as to give an adequate stopping distance between her vehicle and other vehicles traveling to her rear. One, that's not comprehensible. Two, there is no duty of the lead driver to provide enough distance behind her vehicle to the vehicles behind her. That's the duty of the rear vehicle, not the front vehicle. And nowhere in that affirmative defense are the words sudden stop. That was never even pled. And that was also objected to, but that also went before the jury. So that wasn't even pled as an affirmative defense. But let's say the plaintiff, if the jury heard this evidence as they did and the defendant was claiming a sudden stop. So what? Why is that relevant? First of all, this was at an intersection. As I said, it was not on a highway or in the middle of an intersection. This was just before an intersection. This was at a busy intersection during rush hour. The vehicles to the rear of the lead vehicle should anticipate and should be able to foresee that the vehicle in front might have to come to an abrupt stop at a busy intersection at rush hour at this time. There might be vehicles that are continuing to come through the intersection. There might be pedestrians.  And in fact, the lead vehicle has a duty before entering the intersection to let the intersection clear before proceeding forward. Just because the light turns green, that doesn't mean you just drive into an intersection. You have to let it clear. So if the light turns green, again, that's why I say the light being green doesn't matter. Was there some testimony there was a truck going through the intersection? Yes. My client, the plaintiff stated that she was kind of on an angle like this, sitting forward, looking to her left, and the last thing she remembers is that a truck was coming through the intersection southbound. So if she indeed started up, she would have to yield to that. But at that time, while she was stopped, she claimed she was then rear-ended by the defendant. Was there a no-turn-on-red sign at this intersection, or could you turn when the light was red? I believe there was a no-turn-on-red because she didn't decide to proceed. But again, this was a busy time of day, so I'm not so sure that that was an issue. She said she saw, just before the light turned green, she did see a truck coming. So I don't think that that was an option at that time anyway, given the traffic conditions, this being rush hour. Counselors, two minutes. Thanks. This is really kind of a common situation for those who drive quite a bit, that you're there in that right-turn lane. Okay, everybody's looking to the left to see what's in that intersection, coming through the intersection. The lead vehicle looks and sees that it's kind of clear, inches forward, maybe steps on the brake again to make sure. But the following vehicle sees only the car moving ahead, and the driver of that vehicle is turning to the left to look to see if now they can get in, and there's nothing in the intersection. Well... I mean, that seems to me to be what happened here. Well, that... And then we never saw the stop of the lead vehicle. Well, the testimony of the case was that the defendant and the passenger both saw the plaintiff's brake lights come on just before the impact. Before the impact. Well, at the time that the plaintiff made a stop at the red light, and then once the light turned to green and the plaintiff supposedly started to proceed, they saw the brake lights come on again. So her defense testimony is that she was looking at her. But the argument, your argument, would be that it's too late when they saw that. Of course you see it before you impact. Well, here's another interesting... And so then the question is, is there a proper distance between, or are you looking? Right. Was she looking? I doubt it. Was there a proper distance? No. She should have kept one to two car lengths, knowing that she's coming around a bend and might have to be looking left for traffic coming southbound on Hennepin. The other thing is that the defendant testified that there were cars behind her, also five to seven feet behind each other, kind of stacked up. And the interesting thing is that as these vehicles start making their turns, supposedly, according to the defendant, and the plaintiff supposedly makes a sudden stop, the defendant strikes the plaintiff, but none of these vehicles behind the defendant strike the defendant. How come they weren't surprised and taken off guard and they're all looking to the left as well? So there's absolutely no reason why the defendant couldn't have avoided this accident. Everyone else did. She also received a ticket for failing to reduce her speed to avoid an accident, and she pled guilty to it. That's even more areas of negligence on her part. She should have anticipated and expected and foreseen that the plaintiff would have needed to make a stop at this intersection. There's other issues which I'll address, but with regards to the special interrogatory, that should have been given. With regards to the B-1004 Illinois IPI instruction, the judge just kind of willy-nilly changed it and made it reciprocal to the plaintiff, and there's no basis for that in the IPI book or case file that says, OK, 1004 says that the defendant has the duty to be free from negligence. And then, oh, let's flip that around. Let's add another paragraph. The plaintiff has the duty to be free from negligence. When B-1003 was also used in this case, and that was on an issue that was key in this case, negligence, and that just highlighted and put more of a duty, I believe, on the plaintiff than was required in this case. So the instructions were improper. Thank you, Your Honor. Thank you. Mr. Begley. Good afternoon. Good afternoon. Thank you. And may it please the Court, Your Honor's counsel, as you've seen from the argument you've heard today in the first 15 minutes as well as in the pleadings and the briefs that have been presented, there are no grounds. There's five basic arguments that are made on appeal. Four of those arguments we find to be baseless and not supported by the record. We think those should be stricken. They were not really addressed here during the argument portion, but I think there's a reason for that. The first one is that they allege, and this isn't in particular order to the brief that was filed by the epaulon, but the court erred in not admitting a special interrogatory. I ask the epaulon to point to where that special interrogatory is in the record. There was no actual special interrogatory presented at the time of trial. There was an argument had. The timing of that argument was presented during jury deliberation, which, as this Court knows, is not the proper time to present a special interrogatory. In addition to that, the Court denied the argument based on the finding that any speculative special interrogatory would not be asking them to find a basis of fact but instead a basis of law, which was the basis for rejecting that opinion. But, again, that was made at the time of deliberation. While the jury was already out deliberating the issues in this case, we find that there is not a proper basis to present that motion on appeal or that argument on appeal. The second part is the court erred in admitting modified jury instruction 10.04. If you look at the post-trial motion, 10.04 is not addressed in that post-trial motion. They need to preserve that for the record. They certainly didn't do that here. It was thrown in as an ancillary argument to their appeal, and I asked the Court to strike that and ignore that portion of the plaintiff's brief or Epelon's brief because it wasn't preserved on appeal. The argument wasn't made and the surgery court was not allowed an opportunity to address that argument in a post-trial motion. The third argument is that the Court erred in denying a motion for a directed verdict, and as the justices have pointed out here, the main issue here is negligence. It's not necessarily the causation and the extent of the damages. We do have an expert that contested the nature and extent of the damages. We defended this case vigorously, both on liability, negligence, and on the extent of the damages. And as the Court has heard, the motion for a directed verdict was properly denied because there is nothing on the defense side that could have pointed to anybody saying the proximate cause of the damages is the defendant, Jeanette Hurst. That was not the evidence that was presented to the jury. Instead, the evidence that was presented to the jury was that the extent of the damages that were presented to the jury were limited in scope to the injuries from this accident itself. I think that the basis for that motion for a directed verdict was properly denied. In addition, I don't think that there's an adequate point in the Epelon's brief to what the specific basis is to ask this Court to reject or reverse the trial court's decision in that case, other than simply making arguments. The Epelon is not happy with the verdict that was rendered. The first part of our brief, which I will not belabor the argument that's already presented to the Court, is that those four issues, I'm sorry, the last one is that the Court erred in not allowing medical bills. I think that there's a point in the brief of the Epelon that is patently false. And that is, I think it might be page 10, where there's a reference to $34,000 in medical bills that the plaintiff, Epelon, sought to present and have admitted to the jury. Of 34,000 paid bills, that's not the case at all. It's patently false. Not only that, but this argument as to why certain portions of those medical bills were denied and not allowed to be presented and barred is not because they were too remote. The Court was not presented with an adequate record to show what those arguments were on the motions in limine. But I can attest that the reason that those were barred is because, number one, the discovery depositions of the other treaters that counsel has now referred to testified that there was no permanency, no future treatment because of the timing in which they had seen her versus when they testified. Number two, the plaintiff failed to meet their burden in presenting the case and proving their case to the jury. At the time of trial, we filed a motion in limine, which was addressed in the briefs, to limit any damages going to the jury that were not adequately supported by testimony in the foundation. You have numerous treaters, numerous physicians, physical therapists, that were never called to testify and could not testify or would be required to testify in order to link in those special damages. You have Dr. Jimenez. You have Dr. Bohegal. You have Dr. Kyle, a pain specialist. These are all doctors that treated the plaintiff at Pallant years after this accident for an ancillary condition, something that we explored during discovery deposition and we speculate is a reason why they were not called at the time of trial. The court properly denied those bills from being presented, either one, not being paid, two, to the extent that they were paid, there was not an adequate foundation of any testimony to relate it to this accident. And certainly $34,000 in paid medical bills and the request at the time of closing of the plaintiff at Pallant's case in chief to present that to a jury and move that into evidence is certainly not the case. It is patently false. Now, if I can get to the main crux of this argument, which was the manifest weight of the evidence. As the justices know, if the record contains any evidence to support the jury's decision, it must be affirmed. Here you cannot say that there is no evidence in support of the jury's decision or that a verdict in favor of the defendant could never stand. There is sufficient evidence to support the verdict of the jury. The plaintiff testified that she pulled up to the intersection, came to a stop, remained in a stop position with a red light, and while a semi-tracker trailer was passing across, not the opposite direction, but perpendicular going in the crossroad. And that's why she did not move. The defendant testified that they pulled up to the intersection, the light turned green. I know that counsel makes an argument about five to seven feet away from the plaintiff, but the defendant testified she moved again. So their argument is ancillary. It's not really relevant because once they move, that argument of what the distance was doesn't make any sense. Not only that, but the argument about following too closely was never raised in the plaintiff's complaint. They have to specify what their allegations are of negligence. Following too closely, as we pointed out to the trial court, was never one of their allegations of negligence. We properly defended this case on one of the bases being a sudden stop. We specified that in our affirmative defense. We had the testimony of the appellee, the defendant, who stated that the plaintiff moved forward. She did not see any trucks coming along. The light was green, and she suddenly, in an abrupt fashion, stopped, which caused them surprise, and they had to stop as well. You have her passenger who testified to the same. The jury is allowed to assess the credibility of the witnesses, and I'd like to explore some of the things that went towards the credibility of the plaintiff. The plaintiff testified that years after this occurrence, she would have to have her husband massage her back on a daily basis in order to get some comfort. Her husband came in to testify and denied it. She testified that there was damage she saw on the back of her car because the defendant testified that there was very little damage, if any, that she saw. She really didn't see anything. In fact, they didn't even think that they made an impact with her car. Her friend, the passenger, Ms. Cooney, stated the same thing. She didn't even think that they made impact. They were kind of surprised at the actions of the plaintiff in the car afterwards. The plaintiff stated that it was a medium impact, that she was thrown all around the car, and that she was injured as a result. That's the opposite of what you have in the testimony of these two defendants. The plaintiff also testified that the damage she saw to her car, she couldn't state. First she said she saw it months later in her driveway. Then she said it was days later. She told us that her husband had repaired it. Her husband denied stating that he repaired it. Her own husband came in and refuted her testimony. If there's anybody that can impeach this plaintiff, I would assume it's her own husband who lives with her every day. And he said, I never massaged her back to relieve her of this pain. And he said he never saw damage to the back of the car? Without specifying a section, I'm fairly certain he did testify he never repaired anything. I don't know if it was asked of him whether he actually observed damage that he would have repaired. This is a typical red light, green light type of case. Certainly the court can see that a jury could come to the conclusion, on a minor amount of the evidence I just presented, that there was a sudden stop. Our argument at the close of the case was simply that. We had a contributory negligence count. We relied on that. The jury had the opportunity to assess that. And I think they did the proper thing in doing so. Why is it red light, green light case? I don't understand that at all. Well, I think it's... I mean, the only relevancy of red light, green light, would be assessing the credibility of one or the other party. That's true. I agree. Maybe I misspoke. I don't mean that it was because one party said red, one was green, because they're not obviously coming at intersecting points. No. Yeah. It's not an intersection case. No. But the point I attempted to make, and I think I failed at it, was that you have the defendant stating that the light was green and she moved forward and came to a sudden stop. The plaintiff says clearly the opposite, that she remained stopped, that the light was always red and never moved again. So the jury has a responsibility of assessing the credibility of these witnesses, and we think they did the proper thing there. Do you know if there was a sign that said no terminology? Your Honor, I don't know if there was at the time of this incident, and I don't think there was any testimony to that fact during the time of the trial. There was a note that was presented to the court during deliberations confirming that their opinion was that they decided that the plaintiff was majority negligent and utilized Verdict Form C. That was specified during deliberations. The note said if we decide that the majority negligence is on the plaintiff, do we use Verdict Form C, which means awarding no damages. They clearly pointed out what the understanding was. There are a few cases that were recited by the appellant in their case in chief, and we asked the court instead of relying on the case in Apatow, which they referenced, as well as Hickox, to look at the cases in Morse v. Johnson, which distinguishes Apatow, they even distinguished Apatow stating that there was no occasion to consider contributory negligence in that case. So factually and obviously legally, there was a different scenario presented to the court in that case. In Gaines v. Townsend, it distinguished the plaintiff's reliance on Hitchcocks and Burroughs. In there, the court stated that the testimony distinguishing that case was distinguishable from Burroughs and Hickox because there was no issue whether the plaintiff was injured, and here's the key part, or whether defendant's negligence was the proximate cause of any injuries proved by the plaintiff. We think that's the same case here. The Morse case, which is a third district appellate court case, distinguished Apatow in the sense that there was no reference to contributory negligence in that case. We asked the court to adopt the reasoning and decisions in Morse and Gaines cases, which stated that if the jury was persuaded that the appellee's recollection was more reliable, and apparently they were, then their decision was not against the manifest weight of the evidence. As we stated a moment ago, or as I stated a moment ago, there was an aggressive defense made in this case towards the aspect of contributory negligence. We think that the testimony that was presented to the court adequately showed that there was evidence that could sway in the favor of the defendant, and that's what it did here, and if there's any evidence that would support the decision that was rendered by the trial court, then the decision of the trial court should be affirmed, and we ask that that happen here today. Thank you. Thank you, Mr. Bedley. Mr. Basile, any rebuttal? Yes. Just to address some of the arguments made by defense counsel. First of all, the special interrogatory in plaintiff's reply brief, page 12, recites the record on appeal, page 562, and 566 to 576, where the discussion in the jury instruction conference was had with the judge regarding the special instruction, and you'll read, there's ten pages of it there, where I was going back and forth with the trial judge, urging him to use a special interrogatory, because I didn't want to run into the situation where we get a verdict and not know if it was based on causation and damages or negligence, because, again, we believe that causation and damages should have been directed, and the only issue to go to the jury would have been negligence. Now, I know defense counsel pointed out that the jury came back with a note saying that if we find the plaintiff majority at fault, does that mean she gets no damages, and I think what happened in this case is they went to deliberate late on a Friday afternoon, which the trial judge said he was not going to do, he didn't want to do that, but then at the last minute he said, okay, you're going to do closing arguments today, and it was like 4 o'clock in the afternoon. I think the jury just wanted to get out of there, and I think they knew that they couldn't find on causation and damages, because all they heard was that the plaintiff was damaged and injured as a result of this accident, so they attempted to get out by saying, well, she was majority at fault, but the evidence didn't show that, and as your honors know, that a juror's affidavit cannot impeach a verdict, in other words, we couldn't come in here and say, oh, look, I got an affidavit from a juror, and this is what happened back there. We think the same, and I haven't found any case law on it, but we feel that the same is true, that a juror's note, in this case, should not be able or be used to support a verdict in the case, so I think that's a nonissue, but nonetheless, you will see from the record on appeal 562 through 576, how we were urging consistently that the special interrogatory be given, and in fact, the wording of the special interrogatory, now, I don't know what happened to it. I didn't see it in the court file, and I didn't have it, but I specifically read out the language that was on that special interrogatory, and your honors will see that on page 12 of my reply brief. So you're saying you tendered a written special interrogatory? A written, yes, and in fact, in the reply brief, again, the exact wording was read to the judge. It said, here's the written special interrogatory, so I can make a record on appeal. Do you find defendant Janet Hurst negligent? Yes or no. And do you find plaintiff Janet Hogan negligent? Yes or no. That's exactly what the written special interrogatory read, so I did tender it to him. 1004, the IPI, I did object to it at trial. That issue is preserved on appeal. We strenuously objected and asked the judge for the defendant to bring in any kind of case law, any kind of reference to the IPI book that would show that the court can just mirror image that instruction and make it applicable to the plaintiff. When we already used B1003, I think that's a reversible error. Directed verdict. Again, when you look at all the evidence in favor of the defendant, it so overwhelmingly favors the plaintiff in this case that there's no way the jury could have returned the verdict otherwise. Again, in this case, if you look at the arguments made by the defendant, okay, there was a sudden stop, and the green light issue is not relevant because whether the light was green or red, this was not an intersection accident where one vehicle is going north, one is going, let's say, west, and one says, hey, I have the green light, and the other one says, no, I have the green light. This is a rear-end accident before you get into the intersection. So was it negligent on the part of the defendant to stop her vehicle five to seven feet behind the plaintiff's vehicle? Yes. If she can't stop her car in time, that's negligent. Was it negligent on the part of the defendant to see the brake lights and not apply her brakes appropriately to stop her vehicle from coming into contact with the rear of the plaintiff's vehicle? Yes. Was it negligent for the defendant to not anticipate, and this was in all the case law, including Hickox and all the other cases cited, the driver from behind has a duty not only to keep her vehicle under control, but they have to anticipate and foresee that the vehicle in front could make a stop, especially at a busy intersection at rush hour. And then again, the defendant also received a ticket for failure to reduce speed. If she was just going, you know, less than five miles per hour, as she testified, and only had her foot off the brake and never even made it to the accelerator, that's her testimony, how could she not bring her vehicle to a stop? And when she's at the accident scene talking to the police, how can she get a ticket for failure to reduce her speed if she was only kind of crawling behind the plaintiff? And again, she pled guilty to that ticket in that trial. She tried to explain away by saying that she just sent the money in, but she didn't, talking about the credibility of these witnesses. It was clear from the certified guilty plea that she appeared, and even said that the defendant appeared before the judge, and she pled guilty to that ticket. Counsel, that's one minute. Thank you. With regards to the credibility of the plaintiff, the defense counsel has stood up here and has pointed to some testimony that's not part of the record, that he never pointed out in the record on appeal, and if it was in there, he certainly could have pointed it out and cited it in his brief, and he didn't point it to any pages, so I would ask that that not be even considered. And that's on a collateral issue anyway. That doesn't go towards negligence, because the plaintiff says, oh, my husband gave me some massages, and then the husband comes in and says, oh, I don't remember giving him massages. That doesn't go towards who was at fault for this accident and who was negligent. It's not credibility. Well, again, that's the defendant's testimony that that was the testimony, but there is no testimony before, Your Honors, and there was no reference to the record on appeal. It was never made. With regards to the case, the Hickcock case is right on point. It's a rear-end accident. The defendant there claimed that the plaintiff made a sudden stop, and the court reversed the verdict for the defendant in that and remanded the case for a new trial, even though the defendant claimed that the plaintiff made a sudden stop, because there was no evidence that there was a sudden stop. There was no skid marks. There was no brake squealing, none of that, and that's the same as in here. And the court pointed out there that this wasn't a case that was on the highway, in the middle of an intersection. What's important here is that the plaintiff did nothing negligent. What did the plaintiff do that was negligent in this case that would put her over 50% at fault for this accident? Did she apply for brakes? Let's say the jury believes she applied for brakes suddenly. The defendant should have anticipated that. Thank you. Thank you, Your Honors. We ask that the case be remanded for a new trial. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand in brief recess for a panel.